**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RODGER JENKINS and GREGORY JONES, <br><br> *Plaintiffs*, <br><br> v. <br><br> XPRESSPA GROUP, INC., <br><br> *Defendant*. | Case No. 19-CV-1774 (VEC) <br><br><br> **JOINT THIRD AMENDED COMPLAINT** |

Plaintiffs Rodger Jenkins and Gregory Jones, by and through counsel and pursuant to the parties' Stipulation to Amend Complaint, state as follows for their complaint against Defendant XpresSpa Group, Inc.

## THE PARTIES

1.      Plaintiff Rodger Jenkins ("Mr. Jenkins") is an individual resident of the State of Tennessee.

2.      Plaintiff Gregory Jones ("Mr. Jones") is an individual resident of the State of Tennessee.  Mr. Jones is joined as a required party pursuant to Federal Rule of Civil Procedure 19(a) and the Court's May 24, 2019 order (Doc. 27).

3.      Defendant XpresSpa Group, Inc. ("XpresSpa"), formerly FORM Holdings, Corp. ("FORM Holdings), is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of New York.  XpresSpa may be served with process through its registered agent, VCorp Services, LLC, 1013 Centre Road, Suite 403-B, Wilmington, Delaware 19805.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a)(1), because this is a civil action between citizens of different states where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.      This Court has personal jurisdiction over XpresSpa by virtue of its specific and general contacts with this judicial district, including, but not limited to, its continuous and systematic residence in this judicial district.  Furthermore, this action arises under a Stock Purchase Agreement, a copy of which is attached to this complaint as Exhibit 1, in which the parties "irrevocably submit[] to the exclusive jurisdiction and venue" of this Court.  Ex. 1 at § 12.12.1.

6.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to this complaint occurred and continue to occur in this judicial district.  In addition, in the Stock Purchase Agreement, the parties "irrevocably submit[] to the exclusive jurisdiction and venue" of this Court.  Ex. 1 at § 12-12.1.

**FACTS**

7.      FORM Holdings operated as a diversified holding company specializing in identifying, investing in, and developing small-and middle-market growth companies.

8.      On February 2, 2017, FORM Holdings acquired Excalibur Integrated Systems, Inc. ("Excalibur") pursuant to the Stock Purchase Agreement attached to this complaint as Exhibit 1.

9.      Excalibur was in the business of designing, installing, and integrating technology solutions, including data collection and wireless integration products, and providing customers with reliable remote access to data.

10.     At the time of the acquisition, Mr. Jenkins held eighty percent (80%) of the shares in Excalibur.  Mr. Jones held the remaining twenty percent (20%) of Excalibur shares.

11.     Under the Stock Purchase Agreement, as consideration for its purchase of Excalibur's shares, FORM Holdings agreed to financially compensate Mr. Jenkins and Mr. Jones, either in cash or in shares of its common stock (the "FORM Securities"), in an amount dependent upon the sales generated by certain customer accounts identified in the Stock Purchase Agreement (the "Seller's Accounts").

12.     Specifically, Section 2.3 of the Stock Purchase Agreement provides that Mr. Jenkins and Mr. Jones are each to receive $500,000 in FORM Securities or cash for every $2,000,000 in sales generated by the Seller's Accounts during the first three years following the acquisition, until the gross profit of sales generated by their accounts totals $6,000,000.

13.     However, Section 2.5 of the Stock Purchase Agreement authorizes an acceleration of the consideration provided for in Section 2.3 in the event of a change of control of FORM Holdings' subsidiary, Group Mobile International LLC ("Group Mobile").

14.     The Stock Purchase Agreement provides that, in the event of a change of control of Group Mobile, FORM Holdings must pay a total of $1,500,000 to Mr. Jenkins and Mr. Jones, to be apportioned between them according to their relative percentage ownership of Excalibur at the time of its acquisition. Under the Stock Purchase Agreement, XpresSpa, formerly FORM Holdings "shall cause the purchaser of Group Mobile, as a condition to such purchase, to assume the obligation to pay" one half ($750,000) of the $1,500,000 to Mr. Jones and Mr. Jenkins. The total sum of $1,500,000 is to be paid within sixty (60) business days from the change of control if (a) more than 25% of Group Mobile's aggregate revenue was then derived from accounts attributable to the efforts of Excalibur and/or Mr. Jenkins or Mr. Jones and (b) Mr. Jenkins had met all applicable sales targets during his employment by Group Mobile.

15.     According to Section 2.5 of the Stock Purchase Agreement, any applicable sales targets for Mr. Jenkins' employment with Group Mobile – and for the purposes of the acceleration of consideration provision – were to be set forth in the employment agreement attached to the Stock Purchase Agreement as Exhibit C.   That employment agreement, however, sets no applicable sales targets for Mr. Jenkins.

16.     Group Mobile and Mr. Jenkins never otherwise established or agreed to definite, applicable sales targets for Mr. Jenkins during his employment or in connection with his employment agreement.  However, at the time of the acquisition, Group Mobile derived more than 25% of its aggregate revenue from Excalibur's and/or Mr. Jenkins' and Mr. Jones' accounts, and Mr. Jenkins had complied with all terms of his employment.

17.     In January 2018, FORM Holdings changed its corporate name to XpresSpa Group, Inc.

18.     On March 23, 2018, XpresSpa sold Group Mobile to Route1 Inc.  This sale was a change of control of Group Mobile under the Stock Purchase Agreement.

19.     All conditions precedent to Mr. Jenkins and Mr. Jones receiving the accelerated consideration set forth in Section 2.5 of the Stock Purchase Agreement were satisfied at the time that XpresSpa sold Group Mobile to Route1.

20.     Pursuant to the terms of the Stock Purchase Agreement, XpresSpa was required to pay Mr. Jenkins and Mr. Jones, collectively, the total sum of $1,500,000 within sixty (60) business days after the March 23, 2018 sale of Group Mobile.

21.     Pursuant to the terms of the Stock Purchase Agreement, XpresSpa was contractually required to cause Route1, as the purchaser of Group Mobile, to assume the obligation to pay one half ($750,000) of the accelerated consideration due to Mr. Jones and Mr. Jenkins under

the Stock Purchase Agreement as a condition to Route1's purchase of Group Mobile from XpresSpa.

22.     XpresSpa not only failed to cause Route1 to assume the obligation to pay the remaining $750,000 to Mr. Jenkins and Mr. Jones, but affirmatively represented to Route1 that it had no obligation to Mr. Jenkins and Mr. Jones under the Stock Purchase Agreement.

23.     XpresSpa failed to pay or cause to be paid to Mr. Jenkins and Mr. Jones the total sum of $1,500,000—or any other amount—within sixty (60) days following the acquisition of Group Mobile, and  XpresSpa continues to refuse to pay Mr. Jenkins and Mr. Jones as required by the Stock Purchase Agreement.

24.     Section 12.13 of the Stock Purchase Agreement provides for the remedy of specific performance of any contractual term "breached or violated" by any party.

**COUNT I: PLAINTIFFS' CAUSE OF ACTION FOR BREACH OF CONTRACT AGAINST XPRESSPA**

25.     Mr. Jenkins and Mr. Jones incorporate by reference the allegations of the foregoing paragraphs of this complaint.

26.     The Stock Purchase Agreement constitutes a valid and enforceable contract between and among XpresSpa, Mr. Jenkins, and Mr. Jones. All conditions precedent to Mr. Jenkins and Mr. Jones receiving the accelerated consideration set forth in Section 2.5 of the Stock Purchase Agreement were satisfied at the time of Route1's purchase of Group Mobile, which was a change in control.

27.     Pursuant to Section 2.5 of the Stock Purchase Agreement, in the event of a change of control of Group Mobile, XpresSpa and the purchaser of Group Mobile shall pay $1,500,000 to Mr. Jenkins and Mr. Jones, to be apportioned between them according to their relative percentage ownership of Excalibur at the time of its acquisition.

5

28.    Pursuant to Section 2.5 of the Stock Purchase Agreement, XpresSpa was contractually required to cause Route1, as the purchaser of Group Mobile, to assume the obligation to pay one half  ($750,000) of the $1,500,000 in accelerated consideration due to Mr. Jones and Mr. Jenkins under the Stock Purchase Agreement as a condition of Route1's purchase of Group Mobile from XpresSpa.

29.    XpresSpa failed to cause Route1 to assume the obligation to pay Mr. Jenkins and Mr. Jones the remaining $750,000 in accelerated consideration due under Section 2.5 of the Stock Purchase Agreement as a condition to Route1's purchase of Group Mobile.

30.    XpresSpa breached or violated the Stock Purchase Agreement by failing to pay Mr. Jenkins and Mr. Jones the $750,000 in accelerated consideration XpresSpa owed to them, pursuant to Section 2.5 of the Stock Purchase Agreement, within sixty (60) days of the change in control of Group Mobile.

31.    XpresSpa breached or violated the Stock Purchase Agreement when it failed to cause Route1, as a condition to Route1's purchase of Group Mobile, to assume the obligation to pay Mr. Jenkins and Mr. Jones the remaining $750,000 in accelerated consideration due under Section 2.5 of the Stock Purchase Agreement within sixty (60) days of the change in control of Group Mobile.

32.    As a direct and proximate result of XpresSpa's breach of contract, Mr. Jenkins and Mr. Jones have suffered damages in the amount of $1,500,000.

**WHEREFORE**, Mr. Jenkins and Mr. Jones respectfully request that the Court:

(a)    Issue process to be served on XpresSpa;

(b)    Enter judgment in favor of Mr. Jenkins and Mr. Jones and against XpresSpa and order specific performance of Sections 2.3 and 2.5 of the Stock Purchase Agreement;

      (c)     Award compensatory damages, attorneys' fees, expenses, costs, and pre- and post-judgment interest to the extent allowed as a result of XpresSpa's breach of contract;

      (d)     Tax the costs of this action against XpresSpa;

      (e)     Grant such other and further relief required or permitted at law or in equity to accord complete relief among the parties.

RESPECTFULLY SUBMITTED,

**McKOON, WILLIAMS, ATCHLEY
& STULCE, PLLC**

By:   *s/ James R. McKoon*
    **JAMES R. McKOON**
    Pro Hac Vice
    *Attorneys for Plaintiff Gregory Jones*
    633 Chestnut Street, Suite 1500
    Chattanooga, TN  37450
    (423) 756-6400/fax: (423) 756-8600
    Email: jmckoon@mwalawfirm.com

and

    JAMES A. SAVILLE, JR.
    HILL RIVKINS, LLP
    45 Broadway, Suite 1500
    New York, NY 10006-3793
    (212) 669-0600 / fax: (212) 669-0698/0699
    Email:  thefirm@hillrivkins.com

**MILLER & MARTIN, PLLC**

By:   *s/ Zachary H. Greene*
    **ZACHARY H. GREENE**
    **HALEY E. MOODY**
    Pro Hac Vice
    *Attorneys for Plaintiff Rodger Jenkins*
    1200 Volunteer Building
    832 Georgia Avenue
    Chattanooga, TN 37402
    Email: zac.greene@millermartin.com
    Email:  haley.moody@millermartin.com

and

ANDRE J. MAJOR, Esquire
HARRIS BEACH, PLLC
100 Wall Street, 23rd Floor
New York, NY 10005
Email:  amajor@harrisbeach.com